UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMAR JOHNSON,

                              Plaintiff,

                -against-

RENRICK BENN,

                              Defendant.

22-CV-6127 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Kamar Johnson ("Plaintiff") brought this action alleging violations of his civil rights by Defendant Renrick Benn ("Defendant"). Defendant now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's motion is DENIED.

## BACKGROUND

The following facts are, for the most part, taken from the Second Amended Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Certain facts are taken from Plaintiff's opposition to the motion to dismiss (styled as an opposition to summary judgment). *See Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375 (KMK), 2022 WL 4538452, at *1 n.3 (S.D.N.Y. Sept. 28, 2022) (quoting *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)) (stating that the "mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's additional materials, such as his opposition memorandum" in considering a motion to dismiss); *Williams v. Barometre*, No. 20-CV-7644 (KMK), 2022 WL 903068, at *2 n.4, 7 (S.D.N.Y. Mar. 28, 2022) (quoting *Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020)) (noting that courts may consider factual

allegations in opposition papers to the extent that they are consistent with the allegations in the complaint).

Plaintiff alleges that in July 2020, while he was incarcerated at Otis Bantum Correctional Center ("OBCC") on Rikers Island, Renrick Benn, D.D.S. performed a tooth extraction on him. ECF No. 35 ("Second Amended Complaint" or "SAC") at 4. Plaintiff claims that during the tooth extraction, the tooth shattered. *Id*. Following, Plaintiff "suffered great pain and swelling in the area the tooth was extracted from." *Id*.

Plaintiff "drop[ped] several sick call slips" noting that he was suffering severe pain. *Id*. Upon being seen by Defendant again, Plaintiff told Defendant that it felt like a piece of broken tooth was left in his gum. *Id*. Defendant looked at Plaintiff's gums and told Plaintiff "that's not a broken piece of tooth, that's just the bone in your gum." *Id*. After this meeting, Plaintiff dropped several more sick call slips, letting Defendant know that Plaintiff could not eat anything and that Plaintiff was in serious pain. *Id*. Defendant again told Plaintiff that "all was well," the "pain and swelling was normal," that "it would soon subside" and "it just takes time to heal." *Id*.

In December 2021, Plaintiff left OBCC for Downstate Correctional Facility, where he was informed that an x-ray showed that he had a piece of broken tooth left at tooth number 15. *Id*. Plaintiff was informed of the same at Clinton Correctional Facility in April 2022. *Id*. In January 2023, at Great Meadow Correctional Facility, Plaintiff underwent another x-ray, after which he was told that his gum grew back over the piece of broken tooth. *Id*. at 4–5. Plaintiff was also told that he had an infection. *Id*. at 5. Plaintiff was given penicillin and ibuprofen twice – in January and February 2023. *Id*. Staff at Great Meadow Correctional Facility told Plaintiff that he would need surgery to remove the piece of broken tooth left in his gum. ECF No. 58 ("Johnson

Aff.") at 2–3. On March 6, 2023, Great Meadow Dentistry performed an operation to remove the tooth fragment. *Id*. at 3.

Plaintiff alleges that Defendant "knew or should have known that a piece of broken tooth had been left in [his] jaw. SAC at 5. Plaintiff further alleges that Defendant failed to take an x-ray even after Plaintiff "kept coming back complaining of severe pain" and that Defendant should have known to take an x-ray. Johnson Aff. at 2. Plaintiff claims that his gum became infected because of Defendant. *Id*. at 3.

Plaintiff filed his Complaint on July 18, 2022, bringing claims against the City of New York and a John Doe dentist. ECF No. 2. On September 13, 2022, the Court issued a *Valentin* order directing the New York City Law Department to provide Plaintiff with the name of the John Doe dentist. ECF No. 9. The New York City Law Department provided Plaintiff with Defendant's name on November 7, 2022 and Plaintiff filed his Amended Complaint, naming the City of New York and Benn, on December 12, 2022. ECF Nos. 15, 17. Plaintiff filed his Second Amended Complaint, naming just Benn, on March 7, 2023. ECF No. 35. Defendant moved to dismiss on April 21, 2023. ECF No. 42. Plaintiff filed his opposition on August 22, 2023. ECF Nos. 56–58.[1] The motion was fully briefed as of October 2, 2023. ECF No. 60.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff

---

[1] The Court notes that Plaintiff's opposition is styled as an opposition to a motion for summary judgment, under Federal Rule of Civil Procedure 56. Nonetheless, the Court construes the papers as an opposition to the motion to dismiss, and applies the relevant standard accordingly.

alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

*Pro se* complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's Complaint and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).

## DISCUSSION

Plaintiff brings his claim under 42 U.S.C. § 1983, alleging that his Eighth Amendment rights (made applicable to the states by the Fourteenth Amendment) were violated due to inadequate medical care. Pursuant to the Eighth Amendment, the government is obligated "to

provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) ("The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care.").

To state a claim under Section 1983, the plaintiff must demonstrate "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 103. This requires satisfaction of a two-prong test, with both objective and subjective components: that the alleged deprivation of adequate medical care is "sufficiently serious" and that the charged official acted with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 279–80 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 300 (1991)). The objective component requires that the person incarcerated be actually deprived of medical care and that the inadequacy in medical care be sufficiently serious. *Id*. at 279. "This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. The subjective component requires that the official acted with deliberate indifference, meaning that "the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)).

## I.    Plaintiff Has Alleged that the Inadequacy in Medical Care Was Sufficiently Serious

The Court first finds that Plaintiff's alleged condition was sufficiently serious. Factors relevant to the seriousness of a dental condition include "the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (cleaned up). Plaintiff has alleged that he suffered "great pain and swelling," that it felt "like a piece of broken tooth was

left in [his] gum," that he could not "eat anything at all" and that he was in "serious pain" because of Defendant's inadequate treatment. Moreover, Plaintiff's gum became infected and he required penicillin and ibuprofen. Eventually, Plaintiff required surgery to remove the tooth fragment left in his gum by Defendant's prior extraction. These allegations are sufficient to state a claim that Plaintiff's dental condition was sufficiently serious.

Indeed, Plaintiff's allegations are similar to those in *Chance v. Armstrong*, in which the Second Circuit reversed the dismissal of a complaint where the plaintiff alleged that he suffered extreme pain, his teeth deteriorated and he was unable to eat properly. *Id*. at 702–03. Other courts in this Circuit have likewise found untreated dental conditions to be serious medical conditions. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (noting that ordinarily a cavity is not a serious medical condition, but that "because a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' within the meaning of our case law"); *Dean v. Coughlin*, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (dental needs including fillings and crowns are serious medical needs, as individuals suffered from pain and discomfort as well as serious health consequences as a result of lack of treatment).

## II.    Plaintiff Has Alleged a Sufficiently Culpable State of Mind

Plaintiff also satisfies the second prong of the test, alleging that Defendant acted with deliberate indifference. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839–40). "[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." *Id*. (citing *Farmer*, 511 U.S. at 835–37).

That Plaintiff saw Defendant several times complaining of serious pain, telling Defendant that it felt like a piece of broken tooth was left in his gum and that he could not eat anything, and that Defendant told Plaintiff in response that everything was fine, is enough to sufficiently allege that Defendant acted with deliberate indifference. *See Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994) (finding that a jury could infer deliberate indifference when plaintiff repeatedly complained of severe pain and defendant doctor frequently examined him "from the fact that [defendant] knew the extent of [plaintiff]'s pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [plaintiff]'s situation"). Moreover, that Plaintiff went untreated by Defendant for nearly a year and a half, only receiving treatment after he moved correctional facilities, demonstrates deliberate indifference on the part of Defendant. *See Dean*, 623 F. Supp. at 402–03 (one year delay in treating a cavity evidenced deliberate indifference on the part of prison officials). Although Plaintiff alleges that Defendant "performed the work so negligently that the tooth shattered," and Defendant claims that this means Plaintiff has only made allegations rising to the level of negligence, Plaintiff's allegations of deliberate indifference are about the inaction from Defendant following the extraction, not the extraction itself.

Defendant contends that the facts alleged are insufficient to indicate that Defendant knew or should have known of the unrecognized injury. ECF No. 54 at 7–8. Instead, Defendant argues, Plaintiff's allegations are "textbook conclusory statement[s]," *id*. at 9, and that "there is no connection established between Dr. Benn's actions and any unconstitutional deprivation of medical care." *Id*. at 8–9. The cases Defendant relies on to support this argument are inapposite. For example, in *Goode v. City of New York, Corizon Health Services*, the Court found that the plaintiff failed to allege what the defendant "knew about his symptoms, such as whether she was

aware of [plaintiff's] observable symptoms, and what, if any, action she took to alleviate those symptoms." No. 17-CV-3735 (PAE) (RWL), 2018 WL 3768585, at *5 (S.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. Goode v. City of New York*, No. 17-CV-3735 (PAE) (RWL), 2018 WL 3768034 (S.D.N.Y. Aug. 8, 2018). In *Jabot v. MHU Counselor Roszel*, the plaintiff did not allege that the defendants were aware of facts that would have alerted them to the need to treat the plaintiff. No. 14-CV-3951 (VB), 2016 WL 6996173, at *4 (S.D.N.Y. Nov. 29, 2016). The same is true in *Morales v. Mackalm*, also relied on by Defendant. 278 F.3d 126, 133 (2d Cir. 2002).

Unlike these cases, Plaintiff has asserted sufficient allegations to support his claim. Plaintiff has alleged that Defendant knew about his symptoms, including that he was in serious pain and could not eat, both by way of Plaintiff sending multiple sick call slips and by Defendant's observations. He has further alleged that Defendant did not take any actions to alleviate his symptoms, telling him everything was fine and failing to perform an x-ray. Based on these allegations, Plaintiff has plausibly alleged that Defendant was aware of facts that would have alerted Defendant to the need to treat Plaintiff and that Defendant failed to provide him any treatment at all.

While Plaintiff's allegations ultimately may prove to be the result of negligence on the part of Defendant, construing the *pro se* Complaint liberally, Plaintiff has plausibly alleged that Defendant knew or should have known that Plaintiff needed further medical attention and that Defendant was deliberately indifferent to Plaintiff's medical needs.

### III.   Appointment of *Pro Bono* Counsel

Pursuant to 28 U.S.C. § 1915(e)(1), courts may appoint an attorney to represent someone unable to afford counsel. Plaintiff previously made a request for *pro bono* counsel, which the

Court denied "without prejudice and with leave to renew after dispositive motion practice . . . if circumstances warrant such an application at that time." ECF No. 36 at 2.

In determining whether to grant an application for counsel, the Court should first consider whether the plaintiff's position "seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). The Court should then consider the plaintiff's ability to obtain representation independently; the plaintiff's ability to investigate the crucial facts; whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact-finder; the plaintiff's ability to present the case; the complexity of the legal issues; and any special reason in the case why appointment of counsel would be more likely to lead to a just determination. *Id*. at 61–62; *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). Having denied Defendant's motion to dismiss, and considering the factors set forth in *Hodge* and *Cooper*, the Court now finds it appropriate to appoint *pro bono* counsel to represent Plaintiff for the purposes of discovery. Plaintiff has declared that this is a complex case involving medical issues that require expert testimony; Plaintiff wrote to several law firms seeking a lawyer to no avail; and Plaintiff is incarcerated. Plaintiff has not filed a new motion for the appointment of counsel, but the Court grants Plaintiff *pro bono* counsel *sua sponte*. *See Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010).

The Clerk of Court is directed to attempt to locate *pro bono* counsel to represent Plaintiff for the purposes of discovery. The Court advises Plaintiff that there are no funds to retain counsel in civil cases and the Court relies on volunteers. Due to a scarcity of volunteer attorneys, a lengthy period of time may pass before counsel volunteers to represent Plaintiff. If an attorney volunteers, the attorney will contact Plaintiff directly. There is no guarantee, however, that a volunteer attorney will decide to take the case, and Plaintiff should be prepared to proceed with

the case without an attorney. The Office of Pro Se Litigation is respectfully requested to provide the Court with an update by February 16, 2024, as to whether an attorney is willing to represent Mr. Johnson.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate ECF No. 42.

Dated: January 12, 2024
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge